Please all rise. Hear ye, hear ye, hear ye. The Sonoma Appellate Court, for the second initial hearing, is now in full swing. We're soon to adjourn. Now, Mary S. Shostakovich is our... Good morning. We can be seated. Your Honor, this is a case on the Donald H. Schumer crash. 15-20714. People of the State of Illinois. Plenty of athletes. These are all Gonzalez's defendants. Arguing on behalf of the Independent Appellant, Ms. Josette Skelnick. Arguing on behalf of the informed faculty, Mr. Marshall and his students. Good morning, Ms. Skelnick. Good morning, Your Honors. Good morning, Counsel. My name is Josette Skelnick from the Office of the State Appellant Defender. I'm here this morning on behalf of Raul Gonzalez. In this case, after opening statements had been given and one witness had been called, the trial judge, on the State's motion and over the defendant's objection, declared a mistrial. The basis of the declaration of the mistrial was that the defense counsel had unintentionally withheld some discovery information, which the prosecutor claimed surprised and prejudiced the State and affected its ability to proceed. Go through and tell us what information the State reported that was newly discovered. Correct. And I do, Your Honors, should have as a supplemental record the memorandum. It's blue-backed. And I included that because that is where it's highlighted on the e-record. You couldn't see the highlighting. And I would say it's basically four different areas they're claiming. There's one newly discovered and two surprised and prejudiced them. The first deals with what G.B. would do at the Gonzalez home when she came in the morning and waited for her ride to school, that she would sit on the couch or sometimes she would clean the house or sometimes she would leave letters for the family. The second part on the memo deals with G.B. talking bad about Lydia to Nancy, the defendant's wife, and leaving letters for the defendant. Actually, she left letters for everyone in the family. The third deals with what movies the Gonzalez family saw on one occasion when they snuck in and didn't pay and when those movies came out. And I have to say on that too, I had read this initially as there was only one movie, but in fact there's other instances in the record where the defense attorney says, I've talked to witnesses, there were two different movies that G.B. went to the family to see. So this really only deals with what movie did they see when they snuck in and didn't pay. The third is when they watched TV, where G.B. sat in the family home when they were watching TV. The state bears a heavy burden when there's a mistrial declared over the defendant's objection of showing that there's a manifest necessity for the mistrial. In this case, not only was there not a manifest necessity, there was not the slightest necessity. And the judge abuses discretion on that basis in granting a mistrial, which is the most extreme sanction that a judge can impose. And the judge, prior to declaring the mistrial, has other steps that he or she can take, correct? Certainly, yes. And did the judge do that in this case? No, no. Did he offer to do it? He asked the prosecutor, can you go talk to these witnesses? These two witnesses, first of all, they were state and defense witnesses. They were at court that day. So they were sitting there waiting. It was about, I think, noon when this came up. He said, can you go talk to the witnesses? The state's attorney said, I can't possibly do all this in one day. Why? No explanation was ever given for why. This information, not only did it not have any bearing on any of these charges, but a lot of this information was just further details about information that the state had already provided to the defense, especially the letters. These letters were actually, they're in the discovery packet in the record, were actually given by the state. The state knew about the letters. Where G.B. sat when she came into the, and in fact, I'd like to point out, it's very concerning in this case that it seemed like from the very outset of this case, the judge was not simply just trying to accommodate the state, but was acquiescing. And I think that starts with the discovery order. The judge entered a discovery order at the state's request, requiring that every time an attorney spoke to a witness or a potential witness, that person had to, that attorney had to summarize that in writing and turn that over to the other side. And it seems, too, that the state was not just asking for summaries even of conversations. They wanted verbatim details of everything these witnesses said. And I think that's apparent from the opening statement when defense counsel says, and I'm going to quote because defense counsel says, G.B. would show up in the morning at first and knock on the door. They let her in. She would sit on the couch until the family was ready to go. The couch was right by the front door. At that point, the state's attorney objected and asked for a sidebar and told the judge, actually the appropriate response at that point really should have been, so what? She's sitting by the couch. What does that have to do with this case? Instead, the judge had a sidebar, asked defense counsel, did you give this information to the state? And he said, well, I was preparing my opening statement last night. I just talked to Lydia and Nancy and got some other details. And the judge said, did you write that down in a memo and turn it over to the other side? And he said, no, I didn't. And the judge said, that's a problem. Objection sustained. There weren't even any other objections during the opening statement to any of the things the defense attorney said, although later the state tried to say that defense counsel's statements about the movies also was not disclosed. But, in fact, if you'll look at defense counsel's opening statement about the movies, he is telling the jury what G.B. was going to say about the movies. And there also is in the record at C-317 the memorandum that the state gave to defense counsel as to what G.B. had said about the movies. And it says on there, she said the defendant and his family would go to the movies and they would sneak in without paying. She said everyone in the family would go into separate theaters. That didn't come from Lydia. Lydia said nothing about who went where. She just named two movies that they saw when they snuck in and didn't pay. Well, didn't the judge give the state the opportunity or suggest a brief continuance? The judge did, and the state just adamantly refused to talk to these two witnesses. The prosecutor said, first of all, I don't know if they'll talk to me. Well, I think that's, first of all, they were her witnesses, so obviously they had talked to her before. And for her to just outright refuse to even make the effort to speak to these witnesses I think was completely unjustified. And the judge had the authority to say, first of all, I think the judge really in this case legitimately could have said, I don't see how this affects your case. You know what the defense is. The defense is that these didn't, none of these incidents happened. There's no physical evidence supporting these cases or these allegations. How does any of this information affect either how the state's going to present its case or how the defense is going to present its case? So I think the judge would have even been entitled to say, look, we're just going to go to trial. If these witnesses had said any of these things during direct by the state or cross by the state, they would have just rolled with it. There's nothing in any of this information that has any serious or even slight impact on the way this case was going to proceed. Well, didn't, again, I don't mean to keep going back, but I just want to be clear that the court, I thought, told the state that they would give them the entire remainder of that day and evening to investigate. So not just during the lunch hour, but the whole time. And the state said that there was too much information they couldn't give. There was too much information to investigate. We're at a horrible disadvantage. Without ever explaining, at no point did the prosecutor ever explain how did this impact their case. How did it affect the theory? And I think that Pondexter, people, Pondexter, I believe it is from the 4th District, is relevant to this. In that case, the defense didn't tell the state until the state had presented its whole case. Oh, by the way, I forgot I've got a whole other witness who can support my defense. Well, the fact that the state didn't say it doesn't necessarily mean that the record may not reflect it, would it? Didn't say how it would prejudice the state. Didn't say it and doesn't show it, in addition. When you say doesn't show it, you're saying the record doesn't show it? Right. The record doesn't show it. From the very get-go of this case, the defense was, my client didn't do any of this. The defendant denies that any of this happened. And GB does not have a good reputation for truth and veracity. What I'm inferring is, does the state have to explain how it's prejudiced? Is it sometimes so inflammatory or so prejudicial that the state doesn't really have to make a statement? Sure. There could be, for example, I think Arizona v. Washington is a good example of that, where there had been a retrial order because the prosecution had withheld information. At the second trial, defense counsel started telling the jury, the prosecutor committed misconduct in this case. They withheld evidence from you. Sure, that's casting aspersions on the other side and claiming that they hid evidence. Yeah, you don't have to say that that's prejudicial. That affects the impartiality of the jury, obviously. Also, I think it was this court's case in Bagley involved a case where the state could not find the video of the defendant's actual arrest, and it was discovered during the trial. And the judge said, well, I can't really withhold this because it's actually the offense itself. So in that instance, the judge declared a mistrial, and again, it's apparent from that how it affects the case because it's actually the offense itself. But in this case, there's no reasonable impact on the state. I think it's also telling, too, that it wasn't part of what the judge knew at the time, but when they had the hearing on the motion to borrow re-prosecution, it was two months later, and by that time, the state still hadn't spoken to Lydia or Nancy. And I think the defense counsel said, I got a page and a half of discovery from relating to interviews with GB and her mother, who were also at court that day. So I think it belies the state's claims that this put them at a horrible disadvantage, affected the way they were prosecuting the case, and surprised them. Again, it's difficult to understand how any of this surprised them when they knew from the very beginning that the theory of the case was GB's not a credible witness. They're also the case itself, it didn't get far enough along, but you can tell from what happened up to that point and from the opening statement, there was no DNA in this case. Her claims were that they had sex basically everywhere, in the house, in the garage, in the attic, that she bled every time. There was no physical evidence of that, no DNA evidence. So they were dealing with a witness at the get-go that was not a credible witness. The judge, I think it's also rather disingenuous of the prosecutor below, when the prosecutor was demanding all this specificity, and yet the defense was not able to get any more particularized information about when, except for one date, during this charged incident. It was an 11-month scope of time, and the state said, we can't give you any more specifics about when this happened. Denial of the original bill of particulars. Bill of particulars, right, right. I mean, not even to say it happened in the fall or it happened near a holiday. So it's pretty disingenuous of the prosecutor to say, I need specifics on every single thing that every single witness has said, but we can't give you any specifics. In fact, at one point, the state moved for reconsideration of its motion to bar an alibi defense, and what the judge ended up doing was entering an order requiring the defense, if the defendant had information as to where he was at any point over this 11-month period, that the defense had to turn that over to the state. So there were a lot of hearings on work records and bank records and phone records. So basically the judge was requiring the defense to turn over almost essentially its file, but the state didn't have the same burden on its end. Do you concede that this was a discovery violation or no? No, I don't. Because I don't think it, again, what I think the state was demanding and what the judge was apparently agreeing was that you don't have to, it's not just a summary, you have to give verbatim details. And if you have to give verbatim details, then what does that mean then? I mean, you might as well take a video camera when you're interviewing a witness and hand over the disc to the other side. Discovery doesn't go to that extent. All this attorney did was ask about when she came to your house, what did she do? I don't see how that's a discovery violation when they already knew she came to the house in the morning. I'm sorry, I'm running out of time. But they knew everything except for really insignificant details that had no impact on their case. So we would ask, Your Honors, that you find that there was no manifest necessity in this case and that re-prosecution should be barred. Thank you. Thank you. We'll have it at your opportunity at the rebuttal. Thank you. Come on up, Mr. Marshall. Mr. Stevens. Good morning, Your Honors. Good morning. When she first stepped up, I'm going to start right at you. When she first stepped up, I asked her to outline what information was withheld there. What the state was alleging was the necessity for mistrial. And you heard her outline. I think she outlined four different. When she was sit and wait for her ride, talking to Mom about Lydia, the letters, the TV, what they watched on TV, going to the movies. Are any of those things that they outlined an alibi?  They contribute to minimizing the opportunities for the state to say that the defendant could have had contact. The state did note generally, as counsel says, that these circumstances occurred. Isn't minimization of contact generally the defense or generally what is brought up in a child sex case? I'm sorry? Isn't that typically what's brought up in a child sex case? I mean, what prosecutor wouldn't expect that the defense is going to try to minimize the time that the defendant was alone with the victim? Yes, that's true. So how is this a surprise? Because it's been used a number of times that this was an opportunity where the defendant could have been in contact with the defendant. What's the importance of this, you might ask? The defense is sort of devising and saying, well, these are merely sharpening the details. And the state generally knew where this was all going and all that sort of thing. I'd like to take a bit of a macro view on this and talk about under Edwards, the court did a very good Edwards hearing. I don't think anybody's going to disagree with that. It went down point by point by point by point of the various things. And you're just going to decide whether his point by point decisions were correct. What I do really want to point to is the fact that one of the possible alternatives is to bar the evidence. The judge discussed that alternative during the hearing and in the presence of counsel and said, well, I could bar this evidence. But this evidence is far too valuable, essentially, to summarize. And I don't think it's in the defense to engage in such a stringent sanction. I notice that the defense never objected to this. If this was truly as trivial as they said, as they would like it to be here, I think that they could have piped up and said, well, judge, we'll just not get into that. It's just trivial. We don't care about that. I don't think that they are submitting that it's trivial. It's certainly a part of their case. What they are submitting doesn't rise to the level of an alibi or doesn't rise to the level of something that needed to be disclosed verbatim. Since when does the defense, is the defense required to turn over to the state verbatim every statement that is going to be made at trial? Well, I'll refer to, effectively, this 413E. The judge has the power to order such discovery. Wasn't that an abuse of discretion from the get-go? That's the standard. I'm sorry. That's okay. Go ahead. 413E, the judge has very broad powers to order additional discovery as he sees fit. That was my point. Was that an abuse of discretion? As the defendant pointed out here, here's what I require the state to do and here's what I require the defendant to disclose. I don't agree with that at all. The defense never complained about the discovery that they got from the... That's not a discovery question. That's way for this argument. We're not talking about charging instruments. Well, does the bill particularly relate to discovery to the extent that... Let's put it another way. A charging instrument usually has dates on it. Usually have dates, like on a calendar, not a social function. And those dates are there for one purpose, which is to determine whether or not the statute of limitations or the statute of repose might apply. Well, if there are no dates in the complaint information indictment, then isn't it also a discovery problem as well as a charging problem? No, I disagree. It's purely a charging issue. So did Columbus discover America when? 1492. You just gave me a date. Now, he could have been indicted for scounding and spending too much money to find America. Never mind. I'm sorry. My tinnitus has kicked up today. I have it as well. I wonder if they're in harmony. Right. I just have to stand on that position. The defense didn't complain about it, but we don't really know exactly what the defense knew. We don't know exactly what the state knew, because the particulars of the discovery, which would have been voluminous to put into this record, obviously, they weren't all included. My take is that the defense just didn't have any problem with whatever discovery it was getting. It could have asked for more. It didn't want more. As far as what the state was asking, yes, it did ask several times, but it was because the defendant had a somewhat concentrated attitude toward providing what the judge ordered. Well, let's talk about the timing. The judge said to the prosecution when this evidence came in that really wasn't an alibi, I'll give you the rest of the day and this evening, and we'll come back tomorrow, you question these witnesses. And the state's like, oh, my, there's just no way I can't do all of that. What more were they going to get from these witnesses, or more importantly, what more were they going to be able to do to rebut what these witnesses were going to say, i.e., I would drop her off, she would come in, she would sit on the couch, or she would come in and she would clean my house. I mean, how do you rebut that other than through the victim, through G.B.? What are you going to do to go and refute that testimony? Okay. I think that that would be buying into the defense argument. Oh, they should have just taken some time and a short continuance and just talked to the witnesses. They could have done it. They were sitting in the hallway, which I think is a little cavalier for the preparation of such important witnesses. But the point that I did want to make is that, I think I made it in our brief, is that there were other witnesses that for very much of this information could have been cross-checked with. I don't know how easily or how far. For example, what witnesses? Well, for example, the television business. There were all young people who were supposed to be there watching television with them. There was a reference to the son and his friend. I don't recall if they were on the evidence list or not, if they were available. I thought they were. I thought the son's friend was on the evidence list. You're probably right. I don't know how available they were, the defense witnesses, too. So that can factor into it. But wouldn't that have been something that the state should have mentioned to the court? We would like to talk to these two additional witnesses. It would have helped. They didn't do that. I do think that the record demonstrates there's sufficient information here that could be checked. For example, with movies. Don't jump on me if that's not quite the right statement. With the television business, it was more like, we always watch television, then all of a sudden it's like one time. The state could have gotten into that, that sort of thing. Should the state have thought about asking for a mistrial before asking for maybe a couple of days? I'm sorry? Should the state have given some thought about a continuance, maybe asking the judge, okay, you're giving me until tonight or tomorrow, but how about until Thursday or Friday before asking for a mistrial? My question, I guess, in a nutshell is, do you think the state was a little knee-jerk in asking for a mistrial? The judge, I believe, in discussing this said, I have a limited amount of time. If this was to continue with him and this jury, I think it was like about a day. So it was a limited time that this court had scheduled for this. Counsel, though, respectfully, should whether or not a mistrial is granted depend on whether the judge can go into the following week on a trial where a jury's already been impaneled? Is that really a factor that we should consider? Well, the defense didn't really debate that point. No, but you're raising it now to say, should we consider the judge's off-the-cuff remark that if this goes beyond that, I don't know how much time I can give you? Well, the whole point behind saying this is a double jeopardy violation is that a defendant shouldn't be subjected to multiple times in court. It's a one-and-done thing. Well, if you have the beginning of the case and then you're going into a week or two weeks or whatever... More than $12 is what we're talking about. Until tomorrow. It would have helped, but I do think it was apparent from the record. Let me ask you this, what is the prejudice to the state? What does this record show as prejudice to the state that would support manifest necessity for this trial? Well, not a complete alibi that was being alleged. I think it's like a mini-alibi because it, I take that back. I could get in trouble if I stated it. It does limit the scope of opportunities that the state could reasonably say that the defendant and victim had contact. This whole thing... Wait a minute, now you say that in the context of the state's position was, this victim is a child and we can't tell you anything other than it happened sometime between August and July. But this new detail limited opportunities over that 11 months, is that your position? Well, I guess in a sense, yes. It was a wide-open period. And again, I don't know exactly what was in the relative discoveries that it broadened or limited that. It wasn't in our record. That's part of the problem. When interviewing children for testifying on child sex crime, is it, in your work that you do, you see a lot of these transcripts. Is it unusual for a prosecutor to say, do you remember if you were in school during that time or you were out of school? Do you remember if you were wearing a jacket or maybe shorts to kind of narrow it down to a season? Or was it before Halloween or after Halloween? I mean, is that unusual? Do you see that often in child sex cases? It could be, but that's going to be germane to a particular case. We saw none of that in this case. I don't know anything. There was no trial. No, but I mean in an attempt to narrow it down for a bill of particulars. I don't know. Maybe in discovery. The defense didn't say anything about it. It just didn't come up. I'd like to get back to the balance and the other factors, the interest factors. I think there is a balance in these things. You consider them one against the other. The defense is very defensive about not having provided this information. But the thing that I keep coming back to in my mind is what would have hurt? It's not that the defense didn't know that the judge ordered discovery of this information. As a matter of fact, I quote, and I thought it was very telling. There was a discussion where the judge said, well, defense, I'm summarizing your position. You don't have to give this information, and if the state doesn't like it, they should just wait until trial to object. Well, I'm telling you here and now, I disagree, and you have a danger of losing this jury. So just know that those are the ground rules going forward. So the defense knew this. This isn't a surprise. But doesn't the court still have to find a manifest necessity? Where's the manifest necessity? I kind of hear you arguing that, well, it was only the opening statements, what's the big deal, so the defendant had to get ready for trial again. But where's the manifest necessity? I can only say that the facts are what the facts are. If you don't find they're sufficient, I can't make them better. I think there is enough here to make that point. Thank you very much. Thank you. Ms. Scali, you can step up. Mr. Stevens suggests that the prejudice in this case is that this allegedly new information limited the scope of when the defendant and the complainant could have had contact. There was never any dispute that G.B. was at the Gonzales' house frequently, that she went to the movies with the whole family, including her husband. Including the defendant. The defendant went to her birthday party. He was there a lot of times when she was at the house. The defense was always, this didn't happen. She's lying that this happened. So none of this went to that defense. I think the prosecutor herself might have inadvertently summed up the situation when she was arguing against the motion to bar reprosecution. The judge could have said, go talk to these witnesses for ten minutes, or however, half an hour. And then come back and tell me what it is you still need to investigate. He didn't even do that. And when she's arguing against the motion to bar reprosecution, at one point she says, I'll stop there, judge. I think I'm confusing myself with some of the facts. I think that's what was going on in this case. She didn't want to go and talk to these two witnesses because she didn't want to know that there was no basis for this mistrial. She just had this knee-jerk reaction that she didn't get a verbatim statement, and that was a violation in her mind of the judge's order. And she wanted a mistrial on that basis. There was no necessity, let alone a manifest necessity, for a mistrial. So, again, we would ask that this reprosecution be barred. Any further questions? No. Thank you very much. Folks, thank you so much for your argument here today. We will take this case under consideration right after the judgment and, of course, there will be a brief recess. Thank you.